[No. 17746.  Department Two.  May 15, 1923.]

ELLIS-MYLROIE LUMBER COMPANY, *Respondent*, v. F. W.
WILSON, *Appellant*.[1]

SALES (79)—PERFORMANCE—ACCEPTANCE AS WAIVER OF DEFECTS
AS TO QUALITY.  Under an unenforcible executory contract whereby
a retail dealer was to take lumber for sale on consignment, to be
invoiced at current wholesale prices and paid for as sold, the dealer
cannot recover for loss suffered by him through alleged inferior
and unmarketable quality of the lumber consigned to and disposed
of by him; since he was not obliged to take it (PEMBERTON, J., dis-
senting).

SAME (79).  In such a case, the dealer is liable for the whole-
sale value of lumber in his hands at the time of the commencement
of his action for damages, which he wholly appropriated and dis-
posed of without accounting for in any manner.

Appeal from a judgment of the superior court for
Kitsap county, French, J., entered May 22, 1922, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action on contract.  Affirmed.

*F. W. Moore,* for appellant.

*Alexander, Bundy & Swale,* for respondent.

PARKER, J.—The plaintiff lumber company seeks re-
covery of a claimed balance upon the agreed sale price
of lumber furnished by it to the defendant, Wilson,
under a consignment arrangement with reference
thereto, and also a small amount claimed to be due it
from Wilson for towage.  A trial upon the merits in
the superior court for King county, sitting with a jury,
resulted in verdict and judgment awarding to the lum-
ber company recovery, from which Wilson has ap-
pealed to this court.

[1]Reported in 215 Pac. 348.

The lumber company is a manufacturer and whole-saler of lumber. Wilson is a retailer of general mer-chandise, including lumber. About August 1, 1920, they orally entered into an arrangement by which the lumber company was to ship to Wilson lumber upon consignment from time to time as Wilson might order it; the lumber to be invoiced to Wilson at current wholesale prices and he to pay for the lumber as sold by him at the then existing current wholesale prices, should the prices change in that respect from those at which the lumber might be originally invoiced to him by the lumber company. He was to render to the lum-ber company statements at the end of each month of the lumber sold by him during that month and make payment therefor on the 10th day of the following month. No agreement was made as to any fixed period for the continuance of this arrangement, nor as to the lumber company being bound to furnish any amount of lumber, nor as to Wilson being bound to receive or sell any amount of lumber tendered or furnished to him by the lumber company. So, of course, the contract, if it may be rightly so called, was wholly executory and in no event enforcible, except in so far as it might be given life by the performance of some act in con-templation thereof, by one of the parties, giving rise to rights as against such party by the other; that is, so long as the arrangement remained executory, its terms were of no binding force upon anyone. We shall adopt the view of counsel for Wilson touching the legal nature and effect of the relations between the parties created by this arrangement, in so far as its terms be-came executed to the extent of creating some obligation of one as against the other. In his brief he says:

"This contract made appellant the agent of re-spondent until he made a sale to his customer. Im-

mediately upon making such sale the relations of respondent and appellant changed, it then becoming a sale by respondent to appellant on his credit, he to make payment at the end of the month, when he was to report all sales made by him during the month so respondent could enter upon his books a charge against appellant at the current mill price during the month preceding.''

The first consignment of lumber was made by the lumber company to Wilson about September 1, 1920, which was followed by other consignments from time to time up to and including May 6, 1921, when the lumber company declined to make any further consignments, evidently because of the default of Wilson in paying or accounting for the lumber he had sold or disposed of. The total wholesale value of the consigned lumber current at all times in question, as claimed by the lumber company, was $10,152. Wilson had reported actual sales of the lumber, of the current wholesale value of $8,222, up to the time of the commencement of this action; having then on hand lumber of the current wholesale value of $1,930, as claimed by the lumber company. At the time of the trial of this action, however, Wilson had actually sold, or otherwise appropriated, practically all of this lumber. Between October 1, 1920, and May 2, 1921, inclusive, Wilson made payments from time to time to the lumber company aggregating $5,129. Wilson's defense is, in substance, as we understand his counsel, a claim for damages against the lumber company alleged to have been suffered by him by the lumber company's failure to furnish lumber of the quality agreed to be furnished by it and as ordered by him; this having reference exclusively to the alleged inferior quality of lumber which actually had been furnished by the lumber company and received by him. The jury awarded the lum-

ber company recovery in the sum of $4,500, which amount was probably determined by the jury by a computation substantially as follows:

| | |
|---|---:|
| Current wholesale value of consigned lumber as claimed by the lumber company, sold by Wilson prior to the commencement of this action.. | $8,222 |
| Current wholesale value of lumber as claimed by the lumber company consigned to and in hands of Wilson at time of commencement of this action and thereafter appropriated by him before the trial............................. | 1,930 |
| Lumber company's towage bill, which is not questioned ............................... | 287 |
| | $10,439 |
| Payments made by Wilson to the lumber company upon account..................... | $5,129 |
| Credit allowed Wilson by the lumber company upon an adjustment made by him with one of his customers...................... | 305 |
| Allowance made by the jury to Wilson as a deduction in the current wholesale market value of the lumber in his hands and appropriated by him between the time of the commencement of this action and the trial thereof, because of inferior quality .......................... | 505 |
| Verdict ............................... | 4,500 |
| | $10,439 |

The principal contention here made in behalf of Wilson seems to be that the trial court erroneously excluded evidence offered in his behalf of loss suffered by him because of the lumber being inferior in quality to that contemplated by the original arrangement between the parties, and inferior to that which was ordered by him. We are at a loss to see how Wilson

could be prejudiced by the exclusion of such offered proof, in so far as it could have any relation to the lumber consigned to and actually received and sold by him prior to the commencement of this action. He was not obliged to take any of the lumber consigned to him. We have already carefully noticed the nature of the arrangement between them and have seen that it did not obligate the lumber company to furnish or Wilson to receive any lumber. Wilson does not claim that any of the lumber sold by him prior to the commencement of this action was of latent defective quality; but only, in substance, that it was not as it should have been, and not of such quality that he could profitably sell it at a price above the wholesale market price at which it was invoiced to him by the lumber company. But Wilson did take the lumber and did actually sell $8,222 worth of it, measured by the wholesale price which was charged to him by the lumber company's invoice. He does not claim that the actual wholesale market price of the lumber materially changed, so as to entitle him on that account to have the sale price of the lumber to him lessened below the lumber company's invoice prices thereof. Having so accepted and disposed of that portion of the lumber, we think he should not now be allowed to complain either of the wholesale market price thereof as fixed by the lumber company, or of the quality thereof. His position might be more favorable in this respect if he had in the first instance received the lumber in pursuance of an absolute sale thereof by the lumber company to him, which we have seen was not the case, and which his counsel insists was not the case. The record, it seems to us, plainly shows by his own statements that he had full knowledge of what he alleges to be the inferior quality of that lumber at all times from the

times of his receiving the several consignments there-
of until the times of his making sale thereof. In so
far as this offer of proof made in behalf of Wilson
touched the question of the wholesale value of that por-
tion of the lumber and his claimed loss resulting from
the inferior quality of that portion of the lumber is
concerned, we think the trial court ruled correctly in
excluding such proof.

Contention is also made in behalf of Wilson, as we
understand counsel, that he should in no event be
charged with the value of the $1,930 worth of lumber
invoiced and claimed by the lumber company to be of
that wholesale value, which was in his hands at the
time of the commencement of this action and which he
thereafter practically wholly appropriated or disposed
of without accounting in any manner therefor to the
lumber company. We cannot see from the record be-
fore us but that the trial court did allow him to prove
the reasonable wholesale value of that lumber as being
less than that claimed by the lumber company; and
that the jury evidently found in Wilson's favor upon
that question to the extent of deducting from the
claimed wholesale value of that lumber approximately
the sum of $505. We think Wilson is in no position
to claim that he is not at least liable for the reasonable
wholesale value of that lumber, in view of his manner
of appropriating it and failing to account for it. As to
what portion thereof he actually sold, and as to what
portion thereof he may have otherwise appropriated,
we need not here inquire.

We are told in the brief filed here in behalf of the
lumber company that it has "cross-appealed" in this
action; but we find no record here of any such an ap-
peal. The argument in the brief of counsel for the
lumber company is addressed wholly to the claim that

the trial court should have taken the case from the jury and rendered a judgment, as a matter of law, in favor of the lumber company for a considerably larger sum than that which the jury awarded. We do not even find in the record any motion or request addressed to the trial court looking to that end. Possibly the record in the superior court may so show, and that it could be so shown by supplemental record brought to this court. However, the argument of counsel for the lumber company upon its claimed appeal is addressed, as we view it, wholly to questions of fact. In so far as we can see from the record before us, we think it cannot be said that the trial court would have been authorized to grant any motion or request for a directed judgment, as a matter of law, in favor of the lumber company for an amount greater than that awarded by the jury.

The record and briefs bring the case to us in a somewhat involved condition, making it difficult for us to follow counsel and dispose of the questions presented with any great degree of nicety. However, upon the whole record, we think the verdict and judgment render to both parties substantial justice.

The judgment is affirmed. Neither party will recover costs in this court.

MAIN, C. J., and FULLERTON, J., concur.

PEMBERTON, J. (dissenting)—I dissent. Appellant in his answer alleges that the lumber in question was defective, inferior and unmarketable. The trial court erred in refusing to admit the evidence offered by appellant in support of his answer and cross-complaint. The judgment should be reversed and remanded for a new trial.